UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IAN HOGAN,                          )
    Plaintiff,                    )
                                    )
    v.                             )   C.A. No. 13-cv-30190-MAP
                                    )
GARRY M. BOMBARDIER, M.D.,          )
LOUIS J. DURKIN, M.D.,              )
HOLYOKE MEDICAL CENTER, and         )
MERCY MEDICAL CENTER,               )
    Defendants.                   )

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 17 & 19)

September 30, 2014

PONSOR, U.S.D.J.

### I. INTRODUCTION

Plaintiff Ian Hogan brings this civil rights action against Defendants Dr. Garry Bombardier, Dr. Louis Durkin, Holyoke Medical Center, and Mercy Medical Center, based on their refusal to reinstate Plaintiff's authorization to practice as an emergency medical technician ("EMT") at Defendant hospitals. Defendants have moved to dismiss for failure to allege sufficient facts to establish any of the claims brought against Defendants.[1]

---

[1] A hearing on these motions was scheduled for October 16, 2014. Preparation for the hearing revealed that oral

Because there is no basis for Defendants -- all private actors -- to be considered public actors for purposes of Plaintiff's federal civil rights claims, the court will dismiss counts one and two. Moreover, the court will decline to exercise supplemental jurisdiction on the remaining state-law claims and will dismiss them without prejudice to their re-filing in state court. Accordingly, the court will grant Defendants' motions as to all Plaintiff's claims.

## II. FACTS

For purposes of a motion to dismiss, the court must take the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007). Beyond the complaint, the court may also consider "matters of which judicial notice can be taken." Dickey v. Kennedy, 583 F. Supp. 2d 183, 186 (D. Mass. 2008). Because this decision rests on the sufficiency of Plaintiff's federal claims, the court will focus on those allegations. Before summarizing the salient facts from Plaintiff's Complaint (Dkt. No. 1),

---

argument would be unnecessary.

the court will first review the statutory scheme governing the provision of emergency medical services ("EMS") in the Commonwealth.

A. Massachusetts Law

The Commonwealth's Department of Public Health ("DPH") is tasked with overseeing and regulating the EMS system, as well as ensuring that EMS personnel have the appropriate training and experience. Mass. Gen. Laws ch. 111C, § 2. Massachusetts regulations require any hospital that is licensed by DPH and that agrees to provide "medical control" to a licensed ambulance or EMS first response service must also provide clinical oversight of the EMS system by a qualified physician. 105 C.M.R. §§ 130.1501 & 130.1502. Medical control is defined as, inter alia, "training of and authorization to practice for EMS personnel." § 130.1501.

Specifically, each hospital must designate an "affiliate hospital medical director" who is responsible for authorizing any individual EMT to practice at that hospital. §§ 130.1501 & 130.1503(A). The medical director has the power to suspend, revoke, or restrict an EMT's authorization to practice at the affiliate hospital if the EMT has been

found to be deficient in his or her clinical practice. § 130.1503(A). In addition, the medical director can require remedial education for that EMT as a condition for continued or re-authorization to practice. Id. Upon revoking an EMT's authorization, the medical director is to provide a notice to DPH within 48 hours explaining the reasons for the action. Id. An EMT who has lost medical control privileges cannot transport a patient or treat a patient at that affiliate hospital.

B.  Facts as Alleged in the Complaint

Plaintiff is a partially disabled veteran of the U.S. Marines who served two combat tours in Iraq in 2003 and 2004. In 2007, he obtained his basic certification as a Massachusetts EMT and became a certified EMT-Paramedic three years later. Defendant Bombardier served as the affiliate hospital medical director of EMS for Defendant Holyoke Medical Center ("HMC"). Defendant Durkin served as the affiliate hospital medical director of EMS for Defendant Mercy Medical Center ("MMC").

In 2009, Plaintiff began working for American Medical Response ("AMR"). In February 2011, Plaintiff and his

partner were the subject of two complaints about the care and treatment of patients during two separate emergency calls. While investigating the two complaints, AMR identified a third incident that had happened earlier in which Plaintiff supposedly delivered inadequate EMT care. After learning of the incidents from AMR, Dr. Bombardier suspended Plaintiff's medical control privileges at HMC for thirty days, effective February 11, 2011, and ordered remedial training. Subsequently, DPH's Office of Emergency Medical Services ("OEMS") initiated an investigation into the matter.

At the end of the thirty day suspension, OEMS asked Dr. Bombardier to delay restoring Plaintiff's medical control privileges until after its investigation was complete. Dr. Bombardier agreed. Because Plaintiff had no privileges, AMR terminated him on June 1, 2011. On June 9, 2011, OEMS completed its investigation, concluding that Plaintiff's license should be suspended for six months and he should take additional training courses. Plaintiff appealed OEMS' findings to the Division of Administrative Law Appeals ("DALA"), which did not hold a hearing until April 2012. On

December 24, 2012, DALA issued its decision, affirming in part OEMS' determinations and recommending that Plaintiff's license be suspended retroactively and that he be fully reinstated after completing certain remedial courses.

Plaintiff completed these courses, as well as some additional training, through MedicEd.com, an educational company founded, managed, and administered by Dr. Durkin, who signed Plaintiff's certificates of completion. On February 7, 2013, OEMS restored Plaintiff's paramedic license. Nonetheless, Dr. Bombardier refused to reinstate Plaintiff's medical control privileges at HMC. In September 2013, Plaintiff secured a conditional job offer for a position as a firefighter/paramedic with the Ludlow Fire Department. Shortly thereafter, Dr. Durkin suspended Plaintiff's medical control authorization from MMC, Ludlow's affiliate hospital. However, the medical director did not issue a notice of the suspension of Plaintiff's authorization to DPH. On October 1, 2013, the town of Ludlow rescinded its offer of employment to Plaintiff.

Plaintiff alleges that Dr. Bombardier developed a personal animus toward him because of his initial refusal to

meet with the doctor about the February EMS incidents (Compl. ¶¶ 30 & 32), as well as because of the cross-examination of Dr. Bombardier by Plaintiff's counsel during the DALA hearings (id. at ¶¶ 49-50). In particular, Plaintiff alleges that Dr. Bombardier was embarrassed by the results of the DALA hearings, which exposed negligence on the part of HMC's emergency room staff. (Id. at ¶¶ 50 & 63.) Despite numerous appeals by Plaintiff to have his privileges reinstated, Dr. Bombardier refused, stating that his decision was final. Moreover, HMC would not consider any appeal. Plaintiff further alleges that Dr. Bombardier undertook a campaign to discredit him. Plaintiff alleges that the medical director "disseminated false and/or misleading information" about him (id. at ¶ 75), lobbied Dr. Durkin to revoke Plaintiff's medical control privileges at MMC (id. at ¶ 81), and conspired with Dr. Durkin to "convince other medical directors in Massachusetts to deny [Plaintiff] medical control" (id. at ¶ 82).

On November 12, 2013, Plaintiff filed this action against Defendants. Plaintiff's Complaint comprises eight counts: (I) violation of the 14th Amendment, equal

protection clause; (II) violation of the 14th Amendment, procedural due process; (III) Massachusetts Civil Rights Act violations; (IV) civil conspiracy; (V) interference with advantageous business relations; (VI) defamation; (VII) request for injunctive relief; and (VIII) declaratory judgment. On January 17, 2014, Defendants Bombardier and HMC and Defendants Durkin and MMC filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Dkt. Nos. 17 & 19).

### III. DISCUSSION

Under Rule 12(b)(6), the court must evaluate whether the plaintiff's complaint contains sufficient factual allegations that, accepted as true, state a plausible claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Pursuant to the Twombly pleading standard, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and the "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted); Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d

92, 95 (1st Cir. 2007). "Naked assertions" and "legal conclusions couched as factual allegations" do not meet this standard. Twombly, 550 U.S. at 555.

Defendants assert that Plaintiff has failed to allege sufficient facts to support any of his claims, and they present arguments justifying dismissal of all eight counts. The court, however, will focus on the arguments directed at the claims brought under federal law. Specifically, Defendants contend that Plaintiff has failed to allege adequately that any of Defendants are state actors or, alternatively, that Defendants' actions as private individuals are "fairly attributable to the State." Mendez v. Belton, 739 F.2d 15, 17 (1st Cir. 1984).

To sustain a claim for violation of constitutional rights,[2] a plaintiff must allege -- and eventually prove -- that the deprivation of his or her rights occurred at the

---

[2] Plaintiff's federal civil rights claims are not brought pursuant to 42 U.S.C. § 1983, the typical vehicle for claims of this sort. He does assert jurisdiction under 28 U.S.C. § 1343 (providing original jurisdiction in district courts for claims alleging injury due to a conspiracy to interfere with civil rights, as defined by 42 U.S.C. § 1985).

hands of a person "acting under color of state law."[3] West v. Atkins, 487 U.S. 42, 48 (1988). "It is '[o]nly in rare circumstances' that private parties can be viewed as state actors" and, thus, liable for violations of constitutional rights. Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005).

The First Circuit has identified several tests for determining "whether a private party fairly can be characterized as a state actor." Id. at 5. These are the public function test, the "entwinement" test, the state compulsion test, and the nexus/joint action test.[4] Id.; Logiodice v. Trs. of Me. Cent. Inst., 296 F.3d 22, 26 (1st. Cir. 2002). The burden to show that a private party's actions constitute state action rests with the plaintiff. Mead v. Independence Ass'n, 684 F.3d 226, 231 (1st Cir. 2012).

---

[3] For purposes of this memorandum, the court will assume, without deciding, that Plaintiff has adequately plead a deprivation of a "right secured by the Constitution and laws of the United States." West, 487 U.S. at 48.

[4] The First Circuit has variously identified three tests, as in Estades-Negroni, 412 F.3d at 5, and more than three, as in Logiodice, 296 F.3d at 26.

Here, Plaintiff asserts that Defendants can be held accountable as state actors under either the public function or the nexus/joint action test. (Pl.'s Opp'n 15, Dkt. No. 28.) The court will accordingly analyze Plaintiff's allegations within the framework of those two tests.

First, the public function doctrine permits private parties to be considered state actors where they are performing services that have been historically "the sole province of government," such as conducting elections or governing towns. Logiodice, 296 F.3d at 26. The purpose underlying this exception is to prevent states from avoiding their responsibilities by delegating public functions to private entities. Johnson v. Pinkerton Acad., 861 F.2d 335, 338 (1st Cir. 1988). It is not enough, though, that the function be sometimes or often performed by the state; "the function must be one exclusively reserved to the State." Logiodice, 296 F.3d at 26 (internal quotations omitted) (emphasis in original). The measure of whether a particular function is public is based on "historical practice," not on "a normative judgment." Id.

Here, Plaintiff argues that "the supervision and

oversight of the public emergency medical response system has exclusively been the province of the Commonwealth of Massachusetts," through DPH. (Pl.'s Opp'n 15, Dkt. No. 28.) There are two obvious shortcomings to Plaintiff's position. First, he has brought this suit, not against DPH, but against private parties who are regulated by DPH. Second, virtually <u>all</u> formal regulation is the exclusive province of the state. Private parties subject to extensive regulation cannot be viewed as state actors merely by virtue of their compliance with regulations. <u>Mendez</u>, 739 F.2d at 18.

Plaintiff's assertion that Defendant hospitals were obliged to create positions within their institutions similarly does not help him establish state action. Though there does not appear to be a case squarely on this point,[5] the court is nonetheless satisfied that Plaintiff's allegations are insufficient to justify concluding that Defendant doctors and Defendant hospitals are state actors under the public function test. <u>Cf.</u> <u>Estades-Negroni</u>, 412 F.3d at 8 (finding that neither involuntary commitment nor

---

[5] Plaintiff calls this issue "one of first impression in this Circuit." (Pl.'s Opp'n 16, Dkt. No. 28.)

provision of medical and psychiatric services are functions traditionally reserved exclusively to the state, as they had been performed routinely by private actors); <u>Logiodice</u>, 296 F.3d at 26 (stating that education "is not and never has been a function reserved to the state").

Next, under the nexus/joint action test,[6] a private party is considered a state actor where "the state so far insinuated itself into a position of interdependence with [Defendants] that it [should be considered] a joint participant in their actions." <u>Estades-Negroni</u>, 412 F.3d at 6 (second alteration in original)(internal quotations omitted). However, even in areas extensively regulated by the state, a plaintiff must allege more to justify a finding

---

[6] Plaintiff, in his memorandum, appears to merge the nexus/joint action test with the entwinement test. (Pl.'s Opp'n 15 & 17, Dkt. No. 28.) To be fair, the First Circuit appears to have done the same. <u>Compare</u> <u>Logiodice</u>, 296 F.3d at 26 (listing one test as whether the private party is "entwined" with the state and anther test as whether the private party has "willingly engaged in joint action" with the state), <u>with</u> <u>Estades-Negroni</u>, 412 F.3d at 5 (describing the nexus/joint action test as an examination of whether "the totality of the circumstances reveals that the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]" (alterations in original)(internal quotations omitted)). For purposes of this memorandum, the court will apply the nexus/joint action test, as it is broad enough to also encompass the entwinement test.

that private parties are state actors. <u>Id.</u> For example, allegations must be such that they tend to show that the state intimately involved itself in the initial deprivation of a right, or in the day-to-day affairs, or that the private actors were "bound to" the state. <u>Id.</u> at 6-7.

Here, Plaintiff argues that DPH and Defendant hospitals, through Defendant medical directors, are simultaneously overseeing and regulating EMTs in such a manner as to so entwine the state and the private actors. However, "even though 'the procedural scheme created by [a] statute . . . is the product of state action,' a private party normally does not become a state actor merely by invoking it." <u>Estades-Negroni</u>, 412 F.3d at 7 (internal citation omitted); <u>Mendez</u>, 739 F.2d at 18 (stating that extensive government regulation is not enough to "transform an otherwise private hospital into a governmental actor").

Plaintiff's allegations here are simply insufficient to establish a basis for finding state action under the nexus/joint action test. If anything, the allegations in his complaint show that Defendants often acted independently of the state. For example, Plaintiff states that when the

state (via OEMS) asked Dr. Bombardier to delay restoring Plaintiff's privileges until after its investigation finished, Dr. Bombardier "had no obligation" to do so (Compl. ¶ 40); and despite an obligation to notify DPH within 48 hours of suspending an EMT's medical control authorization, Dr. Durkin failed to do so here (id. at ¶¶ 94 & 95). Other than the bald assertion in his Complaint that Defendants were "acting under color of state law," there are no facts establishing any relationship between Defendants and the state outside the basic regulatory scheme. See Estades-Negroni, 412 F.3d at 6 (concluding that there was no state action where the plaintiff alleged that there was extensive regulation of the involuntary commitment process, that the defendants sought court authorization for the commitment, and that they received government money).

In sum, the court can find no basis in Plaintiff's allegations to establish state action through private actors. As Plaintiff cannot show that any alleged deprivation of his constitutional rights took place at the hands of state actors, West, 487 U.S. at 48, counts one and two must be dismissed.

Finally, as the parties are not diverse, the suit is in its early stages, and the claims involve a complex state regulatory scheme, the court will decline to exercise supplemental jurisdiction on the remaining state law claims, counts three through eight. See 28 U.S.C. § 1367(c). Apart from the court's discretionary power, it is clear that the state law issues raised in the pendent claims may more properly be addressed in the state court. Thus, the state law claims will be dismissed as a discretionary matter, without prejudice to their refiling in state court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (Dkt. Nos. 17 & 19) are hereby ALLOWED, with prejudice as to counts one and two, and without prejudice to filing in state court as to counts three through eight. The clerk shall enter judgment for Defendants. Obviously, there will be no need for counsel to appear for oral argument on October 16, 2014. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor  
MICHAEL A. PONSOR  
U. S. District Judge